**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

|  |  |
|---|---|
| **MARVIN SAINTPREUX**<br>**2945 Hewitt Avenue #409**<br>**Silver Spring, MD 20906** ) ) ) ) | |
| *Plaintiff*, ) ) | **Case No. 1:19-cv-1364** |
| **v.** ) ) ) | **Jury Trial Demand** |
| **KEVIN MCALEENAN**<br>**ACTING SECRETARY**<br>**U.S. Department of Homeland Security**<br>**500 C Street SW**<br>**Washington, DC 20472** ) ) ) ) ) ) | |
| *Defendant.* ) ) | |

**COMPLAINT**

Plaintiff Marvin SaintPreux, by and through counsel, hereby files this Complaint for

violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*,

against Defendant Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security.

**Jurisdiction and Venue**

1. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C.

   § 1331, 42 U.S.C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2. Plaintiff has exhausted all administrative remedies prior to filing suit.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or

   omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant

   may be found in this judicial district.

**Parties**

4. Plaintiff Marvin SaintPreux (hereinafter "Plaintiff" or "Mr. SaintPreux") is a dark complexioned African-American man with a disability and was employed as an Emergency Management Specialist, GS-9, Individual and Community Preparedness Division (ICPD), National Preparedness Directorate (NPD), Protection & National Preparedness (PNP), Federal Emergency Management Agency (FEMA) in Washington, D.C. from January 2016 through August 2017.

5. Defendant Kevin McAleenan is United States Acting Secretary of Homeland Security (hereinafter "Defendant" or the "Agency"), an administrative agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

**Factual Allegations**

6. Plaintiff SaintPreux began employment at FEMA in Washington D.C. as an Emergency Management Specialist in January 2016. His first level supervisor was Matthew Lyttle, a Caucasian male, and Branch Chief, and his second level Supervisor was Christi Collins, a Caucasian female, and Acting Deputy Director.

7. As an Emergency Management Specialist, Plaintiff SaintPreux worked with the Individual and Community Preparedness ("ICP") Awards program.  Within ten days of commencing employment, he was made the lead on the ICP Awards. Plaintiff SaintPreux was given the lead position of the ICP Awards when the previous lead went out on maternity leave forty days earlier than expected. He had just arrived at the Division seven days prior to her going out on maternity leave, and with only the assistance of a contractor, he was able to open and close the application period on time successfully.

During his first year of employment, Plaintiff SaintPreux served as the facilitator for four-dozen or more meetings without any incidents.

8. Plaintiff SaintPreux was able to open the awards submission process, the process for adjudicating the submissions, work as an advisor with another Department of Homeland Security department to integrate their awards program into the ICP awards program and achieve the highest number of submissions in program history. Rather than acknowledge his successful completion of his work assignments, Plaintiff SaintPreux's supervisors resented that he was successful in his work and looked for faults in his performance to justify the termination of his employment, and Plaintiff SaintPreux was required to check in twice a day, a task which no other employee was required to do.

9. Plaintiff SaintPreux successfully completed his first year of employment, which involved him creating a webinar that became the highest attended webinar in 2016 and the second highest attended webinar in the agency's history. At the beginning of his second year at FEMA, Plaintiff SaintPreux's supervisors decided Plaintiff SaintPreux would no longer serve as ICPD Awards lead and the position was given to another employee, based on the Awards program being part of the Operation Branch of the Division and Plaintiff SaintPreux was part of the Outreach Branch of the Division. Michele Rolston, Caucasian female, was made the ICP Awards lead and was given a Deputy assistant, a Presidential Management Fellow and a contractor to assist with getting the award program open on time. Ms. Rolston also had a four-month preparatory time to get the Awards application process open on time. However, after four months, the program failed to meet the required deadline to open up the application submission process on time. The supervisors observed that Ms. Rolston was having difficulty managing the awards program. Mr.

Lyttle asked that Plaintiff SaintPreux serve as an advisor to the program. Plaintiff SaintPreux was warned three weeks after becoming the advisor to the program that as an advisor, he would be held responsible for the success of the program and if the numbers did not match the prior year's numbers, his job would be in jeopardy. This same requirement was not made of Ms. Rolston and the other members of the ICP Awards. Plaintiff SaintPreux requested mediation with his supervisor, Mr. Lyttle, through a program at the Agency because he did not understand why he, the advisor, would be held accountable but the person who was the program lead or the deputy would not.

10. On May 24, 2017, an Awards webinar was planned, and the program lead, Ms. Rolston, was ill and asked Plaintiff SaintPreux to read a script related to ICP Awards, prepared by contractors, on a webinar. Plaintiff SaintPreux had the most experience of anyone in the office operating the Awards program, including Mr. Lyttle and Ms. Collins. Upon making Mr. Lyttle aware of the request from Ms. Rolston that he read the prepared script, Mr. Lyttle told Plaintiff SaintPreux that he did not feel comfortable with Plaintiff SaintPreux reading the prepared material. The script that he was asked to read was a simple statement, with a total read time of about fifteen minutes, and it explained the process of submitting applications for the ICPD Awards. In 2016, Plaintiff SaintPreux was the ICP Awards Lead, and therefore, he performed this duty over fifty times in the previous year.

11. Plaintiff SaintPreux was advised by Mr. Lyttle that he was being denied the opportunity to read the script because the presentation was "at the national level."

12. Plaintiff SaintPreux complained to Mr. Lyttle about not being able to read the script that day. He informed Mr. Lyttle that being denied an opportunity to read a script was

embarrassing, because it indicated that Mr. Lyttle did not trust in his ability to read. Plaintiff SaintPreux is a college graduate, who has an MPH and is currently pursuing a doctoral degree.  Benjamin Berger, a Caucasian male, was allowed to read the script. Mr. Berger was called out of a two-day training session to read the transcript by Mr. Lyttle.

13. Plaintiff SaintPreux was the only person in the office with any experience promoting ICP Awards. The former Director allowed him to read those scripts and Plaintiff SaintPreux was commended by his third level supervisor, Charlotte Porter, in 2016 on his quarterly performance evaluation for leading a Legacy Program and making the application submission portion a success. Plaintiff SaintPreux increased the submission number by 15% over the previous year's number, along with holding the record for the highest number of submitted applications in ICP Awards history.

14. In May 2017, Plaintiff SaintPreux filed an EEO complaint against Mr. Lyttle and Ms. Collins based on racial discrimination, as a result of being denied the opportunity to read the script at the May 2017 meeting.  Plaintiff SaintPreux attended mediation with Mr. Lyttle and Ms. Collins on July 21, 2017, with outside mediators.  During the mediation process, Plaintiff SaintPreux presented Mr. Lyttle and Ms. Collins with an email from Mr. Lyttle to Ms. Collins sent on a weekend discussing methods to make Plaintiff SaintPreux time working with the agency harder.  The Agency initially agreed to a settlement at mediation, including the Agency paying for Plaintiff SaintPreux to take a class. However, a few weeks after mediation, Mr. Lyttle and Ms. Collins informed Counsel at FEMA that they were now rejecting the resolution agreed upon at mediation and they were going in another direction.  Plaintiff SaintPreux filed a formal EEO

complaint on August 23, 2017.  Plaintiff SaintPreux was terminated two days later on August 25, 2017, based on false allegations of poor performance.

15. The Agency conducted an investigation of Plaintiff SaintPreux's claims, and in July 2018, advised him that he could request a hearing before the EEOC or a final agency decision. On July 11, 2018, Plaintiff SaintPreux requested a final agency decision.  To date, the Agency has not issued a final agency decision.


**Count I**

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e** *et seq.*
*Race and Color Discrimination*


16. Plaintiff incorporates by reference paragraphs 1 through 15 as if fully stated herein.

17. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race and/or color.

18. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

19. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

20. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to disparate treatment based on her race and color. When Plaintiff successfully completed the first year of employment and served as the lead on the ICP Awards program and met the reasonable expectations

for his position, but Plaintiff SaintPreux's supervisors, Mr. Lyttle and Ms. Collins, denied him the opportunity to read a script at a meeting in May 2017 and selected a Caucasian male to read the script, and terminated Plaintiff SaintPreux's employment in August 2017, based on performance while retaining a Caucasian female who was unable to perform the lead duties.

## Count II

### Violation of Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. § 2000e *et seq.*
### *Retaliation*

21. Plaintiff incorporates by reference paragraphs 1 through 15 as if fully stated herein.

22. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respec4t to his compensation, terms, conditions, or privileges of employment, because of such individual's race and/or color, and it is unlawful to retaliate against an employee because he engages in protected activity.

23. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

24. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

25. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff SaintPreux to retaliation. Specifically, Plaintiff SaintPreux filed an EEO complaint against his supervisors, Mr. Lyttle and Ms. Collins, in July 2017.  Defendant retaliated against Plaintiff SaintPreux by

terminating his employment in August 2017, based on false allegations of poor performance.

## Prayer for Relief

Wherefore, Plaintiff prays as follows:

A.    Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

B.    Award Plaintiff reinstatement and damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination;

C.    Award payment of all fees, costs, expenses, including attorneys' fees and expert fees; and

D.    Award Plaintiff such other relief as to which he may be deemed entitled.

## Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,

*/s/ David A. Branch*
David A. Branch #438764
Law Office of David A. Branch &
Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
davidbranch@dbranchlaw.com