UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARVIN SAINTPREUX,

       *Plaintiff*,

    v.

CHAD F. WOLF,
Acting Secretary, U.S. Department of
Homeland Security, in his official capacity,

       *Defendant*.

Civil Action No. 1:19-cv-01364 (CJN)

**MEMORANDUM OPINION**

Plaintiff Marvin SaintPreux, a black man, alleges that his supervisors at the Department of Homeland Security discriminated and retaliated against him on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See generally* Compl., ECF No. 1. The Secretary moves to dismiss the Complaint, in part, for failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted. *See generally* Def.'s Partial Mot. to Dismiss ("Mot."), ECF No. 11. The Court grants the Motion and strikes certain language from the Complaint, but the bulk of the Complaint remains in place.

**I.    Background**

SaintPreux took a job as an Emergency Management Specialist with the Federal Emergency Management Agency (FEMA) in 2016. Compl. ¶ 6. His primary duties involved supporting a FEMA program that awards monetary grants, known as the Individual and Community Preparedness Awards program. *Id.* ¶ 7. A few days after SaintPreux started, his supervisor took an unexpected leave of absence, leaving SaintPreux to manage the program with a skeleton crew. *Id.* He alleges that he successfully administered the 2016 awards cycle and

1

"achieve[d] the highest number of [application] submissions in program history." *Id.* ¶ 8. As part of his duties, SaintPreux facilitated dozens of meetings and created and hosted a successful public webinar designed to advertise the awards program. *Id.* ¶¶ 7, 9. SaintPreux alleges that, rather than receiving positive feedback, his supervisors, Matthew Lyttle (a white man) and Christi Collins (a white woman), monitored him more closely than they did his peers. *Id*. ¶ 8.

The following year, SaintPreux's supervisors removed him from his temporary managerial position, reassigned him elsewhere, and appointed Michele Rolston (a white woman) in his place. *Id.* ¶ 9. They also augmented the dedicated staff. *Id.* Rolston stumbled, however, and failed to meet several deadlines. *Id.* Lyttle asked SaintPreux to return as Rolston's adviser and to help her get back on track. *Id.* Three weeks later, Lyttle informed SaintPreux that if the program's administration did not improve, SaintPreux's job would be in jeopardy. *Id.* SaintPreux alleges that neither Rolston nor her deputy received a similar ultimatum. *Id.*

On May 24, 2017, Rolston was set to host an iteration of the webinar. *Id.* ¶ 10. She fell ill, however, and asked SaintPreux to substitute for her by hosting the webinar himself—something he had done more than fifty times the previous year. *Id.* But upon learning of the plan, Lyttle intervened and appointed another employee (a white man) to host the event, stating that the webinar was "at the national level" and that Lyttle did not have confidence in SaintPreux's ability to perform. *Id.* ¶¶ 11–12. SaintPreux objected, arguing that he had performed the same duties successfully in the past and that the removal offended him. *Id.* ¶¶ 13–14.

Lyttle persisted, so SaintPreux filed an informal, administrative complaint alleging race discrimination. *Id.* ¶ 14. After attempts at mediation failed, SaintPreux filed a formal complaint on August 23, 2017. *Id.* Two days later, the Department terminated SaintPreux's employment,

citing poor performance. Compl. ¶ 14. SaintPreux attempted to amend his formal complaint to add a charge of retaliation based on the firing, but the Department failed to process the amendment and did not investigate the claim. *See* Mot. at 2. The Agency investigated the discrimination claim and issued a final decision denying it on September 7, 2018. *Id.*; Mot. at 3 (citing Homeland Security Final Agency Decision of Sep. 6, 2018, ECF No. 11-3).[1]

SaintPreux filed this lawsuit on May 10, 2019.[2] *See generally* Compl. The Secretary does not contest that the Complaint states a claim for both discrimination and retaliation as to SaintPreux's termination. *See generally id*. But the Secretary moves to dismiss the Complaint, in part, on two grounds. *See generally* Mot. First, he argues that the denial of an opportunity to host a webinar is not actionable discrimination under Title VII. *See id*. at 5–8. Second, the Secretary contends that SaintPreux never complained of discrimination on the basis of color in his administrative complaints and thus failed to exhaust his administrative remedies, barring him from raising the issue here. *See id.* at 8–10. SaintPreux concedes the second point and abandons any theory of discrimination or retaliation on the basis of color, confining his claims to the ones based on his race. *See* Pl.'s Opp'n to Def's Partial Mot. to Dismiss at 2 & n.1 ("Opp'n"), ECF No. 13.

Having resolved those issues, the Court thus faces an exceedingly narrow remaining question: whether SaintPreux may press his discrimination claim for both the denial of an

---

[1] The Complaint states that the Agency never issued a final decision. Compl. ¶ 15. After SaintPreux filed suit, the Agency discovered that SaintPreux never received a copy of the final decision. It attached a copy to its Motion and concedes that SaintPreux's Complaint is timely given the Agency's failure to provide SaintPreux with the record. Mot. at 3 & n.3.

[2] The Complaint originally named Acting Secretary of Homeland Security Kevin McAleenan as Defendant. Acting Secretary Wolf replaced McAleenan on November 13, 2019. The Court substitutes Wolf as the proper Defendant. Fed. R. Civ. P. 25(d).

opportunity to host a webinar and his subsequent termination, or whether the termination alone states an actionable claim?

## II. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When evaluating a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (internal quotations and citations omitted). Although the Court accepts all well pleaded facts in the Complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554–55 (internal quotations and citations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

## III. Analysis

Count I alleges discrimination on the basis of two discrete actions:

> In violation of Title VII . . . , Defendant knowingly and intentionally subjected Plaintiff to disparate treatment based on [his] race . . . [when] SaintPreux's supervisors . . . *denied him the opportunity to read a script at a meeting in May 2017 and selected a Caucasian male to read the script*, and terminated Plaintiff SaintPreux's employment in August 2017, based on performance while retaining a Caucasian female who was unable to perform the lead duties.

Compl. ¶ 20 (emphasis added). The Secretary challenges the italicized text, arguing that, on its own, the denial is a trivial harm not cognizable under Title VII. *See* Mot. at 5–8.

4

Title VII requires that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race." 42 U.S.C. § 2000e-16(a). At this stage, all SaintPreux must do to survive the Secretary's Motion is to allege that he "(1) suffered an adverse employment action (2) because of [his] membership in a protected category." *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016). That's not a high bar, but SaintPreux must "still plead sufficient facts to show a plausible entitlement to relief." *Id.* at 87. To qualify as adverse, an employment action must cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Thus, while adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (internal quotation omitted). "Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation, are not adverse actions." *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (internal citations omitted).

SaintPreux argues that the denial of the opportunity to host the webinar is itself a materially adverse employment action. *See* Opp'n at 10. But he cites to several cases that deal with Title VII claims for *retaliation*, not for discrimination. *See, e.g.*, *id.* at 9 (citing *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006); *Taylor v. Mills*, 892 F. Supp. 2d 124, 149 (D.D.C. 2012)). "Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In the retaliation context, an employment action may qualify as materially adverse if "it

5

well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation omitted). But SaintPreux does not (and cannot) argue that his removal from the webinar was a retaliatory act—at that point, he had not yet exercised any rights protected by Title VII.

For an employment action to be materially adverse enough to form the basis of a claim of *discrimination* under Title VII, the employee must suffer "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. SaintPreux does not allege that the webinar incident had any such consequences. And even under the lower standard for stating a claim of retaliation, at least one court in this district has found that a one-time removal of a government employee from leading a presentation, when it has no other effects on terms and conditions of employment, is not materially adverse. *See Gray v. Foxx*, 74 F. Supp. 3d 55, 70–71 (D.D.C. 2014), *aff'd* 637 F. App'x 603 (D.C. Cir. 2015).

In an attempt to salvage the claim, SaintPreux also argues that the denial itself does not capture the entirety of his discrimination charge; it was rather the result of a pattern or practice of discrimination that went on for over a year and culminated in the webinar incident—including running the grant program with insufficient resources at his disposal, being replaced as head of the program by Michele Rolston (who also received an augmented staff), being brought back into the program in an advisory role, and then being held accountable for Rolston's mistakes. *See* Mot. at 8. All these incidents together, SaintPreux contends, amount to an actionable instance of discrimination. *Id.*

But the Complaint says no such thing. It identifies two discrete instances of alleged discrimination: the webinar removal and the termination. *See* Compl. ¶ 20. SaintPreux cannot

6

amend the Complaint retroactively in his briefing to add allegations of other discriminatory acts or a hostile work environment. *See* Fed. R. Civ. P. 15(a) (providing rules for amending pleadings). Moreover, as the Secretary correctly notes, SaintPreux made no such argument before the Department in his administrative complaint, so he may not raise it now in litigation. *See* Def.'s Reply to Pl.'s Opp'n and in Further Supp. of Def.'s Mot. to Dismiss in Part ("Reply") at 8–10, ECF No. 14; *see also* FEMA EEO Counselor's Report of Aug. 22, 2017 at 2, ECF No. 11-2 at 17 ("The Complainant believes that he was discriminated against . . . when . . . he volunteered to speak in a co-workers [sic] place who was ill and he was told that he couldn't read the script and they would find someone else to read it."). "Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation omitted); *see also* 42 U.S.C. § 2000e-16(c) (requiring exhaustion of administrative remedies for federal employees).

SaintPreux responds that, by citing to documents that were neither referenced in nor attached to the Complaint, the Secretary has converted his Motion to Dismiss into a Motion for Summary Judgment, thereby entitling SaintPreux to discovery. *See* Opp'n at 7. "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). SaintPreux attached no documents to his eight-page Complaint, though he briefly referred to the Equal Employment Opportunity process generally. Compl. ¶¶ 14, 15, 25. In his Motion, however, the Secretary appends the entire administrative record to support his contention that SaintPreux failed to exhaust his remedies on the color-discrimination issue (and later uses the same documents to argue against any broader interpretation of the webinar

discrimination claim). *See* Mot. at 8–10, Reply at 8–10. In SaintPreux's view, the record is neither "integral to [his] legal claims" nor "referenced in the Complaint[] and should not be considered as part of the [M]otion to [D]ismiss." Opp'n at 7 (citing *Bell v. District of Columbia*, No. 2017 CA 3060 B, slip op. at 2–3 (D.C. Sup. Ct. Nov. 17, 2017)).

"In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are 'referred to in the complaint, . . . are integral to [Plaintiff's] exhaustion of administrative remedies, [or] are public records subject to judicial notice.'" *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997))). "Thus, courts have taken judicial notice of . . . parties' administrative complaints when no party disputes their authenticity." *Id.* at 10. "If courts could not take judicial notice of such public documents, plaintiffs who obviously had not complied with the administrative-exhaustion process could survive motions to dismiss purely by failing to attach their administrative complaint." *Id.*

SaintPreux's citations to several D.C. Court of Appeals and Superior Court cases are unavailing, as most of them did not involve discrimination claims, Equal Employment Opportunity complaints, or questions of exhaustion. *See* Opp'n at 7 (citing, e.g., *Caglioti v. Dist. Hosp. Partners, LP*, 933 A.2d 800, 807 (D.C. 2007) (finding that the settlement agreement underlying the litigation was properly considered as part of the motion to dismiss)). Only one of his cases, *Bell*, is arguably on point. There, the D.C. Superior Court declined to refer to an EEOC complaint even though the defendants argued that it was both central to the complaint and subject to judicial notice of public charges. *Bell*, slip. op. at 2. But the decision does not discuss

any federal cases—in fact, it does not discuss any other cases relating to EEOC documents or discrimination. *Id.* at 2–3. Moreover, the crux of that decision was that the defendant had used the EEOC records to counter *factual allegations* contained in the complaint, so the plaintiff needed an opportunity to submit other evidence to weigh against the defendant's extrinsic evidence. *Id.* That concern is not present here, as SaintPreux does not challenge the authenticity of the records and the Secretary does not dispute SaintPreux's version of the facts; the Secretary merely uses the records to demonstrate that SaintPreux's administrative claims were limited in scope, thereby limiting him to the same claims here. The records are therefore properly incorporated into the Secretary's Motion to Dismiss without converting it into a Motion for Summary Judgment.

Based on those records, it is clear that SaintPreux never complained of any longstanding discrimination to the Department, nor did he identify other discrete incidents of discrimination. *See, e.g.*, James Montgomery's Ltr. of Sep. 14, 2017 (accepting webinar incident claim for investigation). SaintPreux did not exhaust administrative remedies on earlier incidents—indeed, he could not, as EEOC regulations require federal employees to report discriminatory acts within 45 days of their occurrence. *See* 29 C.F.R. § 1614.105(a)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("[Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the . . . time period."). SaintPreux may not now reframe his Complaint.

## IV. Conclusion

SaintPreux has abandoned his claim for color discrimination, and the Complaint does not state a claim for discrimination as to the webinar incident. But the Secretary concedes that the Complaint states a valid claim for both discrimination and retaliation with respect to SaintPreux's termination. For the foregoing reasons, the Secretary's Motion to Dismiss in Part is

hereby **GRANTED**. Those portions of the Complaint are **DISMISSED** without prejudice. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: April 9, 2020

*[signature]*
CARL J. NICHOLS
United States District Judge