UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARVIN SAINTPREUX,

       *Plaintiff*,

   v.

ALEJANDRO MAYORKAS, Secretary,
U.S. Department of Homeland Security,

       *Defendant*.

Civil Action No. 1:19-cv-01364 (CJN)

## MEMORANDUM OPINION

Marvin SaintPreux took a job as an Emergency Management Specialist with the Federal Emergency Management Agency in 2016, and he was terminated a year and a half later. *See generally* Compl., ECF No. 1. He claims that his termination was both discriminatory and retaliatory, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* FEMA has moved for summary judgment on both claims.[1] *See generally* Def.'s Mot. for Summ. J. ("Def's Mot."), ECF No. 25. The Court grants the Motion for reasons that follow.

### I.  Background

SaintPreux, an African-American man, started his two-year appointment as an Emergency Management Specialist with FEMA in January 2016. Compl. ¶ 4; Def.'s Mot., ECF No. 25-15, Ex. 11 at 2. Charlotte Porter served as SaintPreux's first-line supervisor for his first couple months on the job until Matthew Lyttle assumed the role. Compl. ¶ 6; Def.'s Mot., ECF No. 25-15, Ex. 16 at 2. Both Lyttle and Porter are Caucasian. Compl. ¶ 6.

---

[1] This opinion refers to the defendant, the Department of Homeland Security, as FEMA given that SaintPreux worked for the subagency.

1

At FEMA, SaintPreux worked with the Individual and Community Preparedness Division. *Id.* ¶ 4. His primary duties involved supporting programs that reached out to local communities to help them prepare for possible disasters. *Id.* ¶ 7. While SaintPreux's position required him to conduct himself in accordance with workplace standards, perform his job at a high level, and prepare for meetings and events, the parties disagree over the extent to which SaintPreux did all the above effectively. SaintPreux claims that he excelled as an employee and did so "without any incidents." *Id.* SaintPreux alleges that, rather than acknowledge his successful completion of his work assignments, his supervisors "resented that he was successful in his work and looked for faults in his performance to justify the termination of his employment." *Id.* ¶ 8.

FEMA tells a different story, claiming instead that SaintPreux time and again failed to live up to expectations. In September 2016, for instance, Lyttle and Porter evaluated SaintPreux's practice presentations in preparation for event taking place at a college in Alabama. Def.'s Mot., ECF No. 25-20, Ex. 16 at 2. They decided that SaintPreux was not ready to present and that he should communicate to others that his visit would be cancelled. *Id.* at 3. SaintPreux, FEMA asserts, failed to tell anyone about the significance of his expected presentation. *Id.* It took several days to find a replacement speaker to fill SaintPreux's void. *Id.* As a result of the cancellation, Lyttle instructed SaintPreux to include him in all emails and meetings that involve communication with outside stakeholders. *Id.*

Then, in October 2016, Lyttle contacted human resources to discuss his lack of satisfaction with SaintPreux's progress and to request that SaintPreux be placed on "Performance Improvement Plan." Def.'s Mot., ECF No. 25-7, Ex. 3 at 2. In response, Human resources informed Lyttle that SaintPreux lacked eligibility for the plan and instead proposed "termination [as] the recommended course of action." *Id.* After discussions with leadership, Lyttle decided to

give SaintPreux "another opportunity to improve his performance." Def.'s Mot., ECF No. 25-20, Ex. 16 at 4.

SaintPreux, FEMA claims, failed to improve after getting another shot. He missed deadlines, skipped out on meetings, took leave on a day he had been scheduled to attend a fair, appeared at meetings with outside stakeholders without informing management, and visited a local nonprofit instead of teleworking from home as instructed. *See* Def.'s Mot., ECF No. 25-17, Ex. 13 at 2.

A culmination of events spurred SaintPreux to file an informal, administrative complaint alleging race discrimination in May 2017. Compl. ¶ 14. A couple weeks later, Lyttle reached out to human resources a second time about SaintPreux's poor performance and to discuss grounds for termination. *See* Def.'s Mot., ECF No. 25-14, Ex. 10 at 2–3. After attempts at mediation failed, SaintPreux filed a formal complaint in August 2017. Compl. ¶ 14. Shortly thereafter, FEMA terminated SaintPreux's employment, citing a host of examples that demonstrated his poor work performance. *Id.*

SaintPreux filed this lawsuit on May 10, 2019. *See generally id.* He alleged that FEMA discriminated against him on account of his race and color, and that his termination was the product of unlawful retaliation. *Id.* ¶¶ 15–25. This Court granted in part Defendant's motion to dismiss, Def.'s Mot. to Dismiss, ECF No. 8, which narrowed the issues to SaintPreux's unlawful discrimination claim on the basis of his race and his unlawful retaliation claim. With discovery complete, FEMA has moved for summary judgment on the outstanding claims. *See generally* Def's Mot.

## II.     Summary Judgment

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  A "genuine" dispute about a material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party has met its burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Though the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" its position, *Anderson*, 477 U.S. at 252.  In other words, "there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Id.*

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255).  Yet "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although "summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Baylor v. Powell*, 459 F. Supp. 3d 47, 53 (D.D.C. 2020) (quotation omitted).  As "conclusory allegations" and "unsubstantiated speculation" will not suffice to create genuine issues of material fact, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bell v. E. River Fam. Strengthening Collaborative, Inc.*, 480 F. Supp. 143, 149 (D.D.C. 2020) (quotation omitted).

### A. SaintPreux's Claim of Unlawful Discrimination

Section 703(a)(1) of Title VII makes it an "unlawful employment practice" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of unlawful discrimination in violation of Title VII "may be proven by direct or circumstantial evidence." *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020). To establish a *prima facie* discrimination claim with indirect evidence, a plaintiff must show that (1) he falls within a protected category, (2) he suffered an adverse employment action, (3) and the unfavorable action gives rise to an inference of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006).

Absent direct evidence, discrimination claims proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (clarifying that where a plaintiff produces direct evidence, she "may prevail without proving all the elements of a prima facie case."). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action. *McDonnell Douglas*, 411 U.S. at 802. This burden is "one of production" in which an employer must produce evidence "sufficient for the trier of fact to conclude" that the action was taken for the provided reason. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 854 (D.C. Cir. 2006); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (noting that an employer's explanation for the challenged action must be "clear and reasonably specific"). Some helpful factors used to decide whether the employer has satisfied its burden to articulate a legitimate

nondiscriminatory reason for the action taken include:  whether (1) the employer produced "evidence that a factfinder may consider [at summary judgment];" (2) "the factfinder, if it believed the evidence, [could reasonably] find that the employer's action was motivated by a nondiscriminatory reason;" (3) the nondiscriminatory reason is "facially credible in light of the proffered evidence;" and (4) the evidence presents "a clear and reasonably specific explanation as to how the employer[] applied [its] standards to the employee's particular circumstances." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019).

When the employer proffers a clear and specific reason, the "central question" at summary judgment becomes whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted rationale amounts to a pretext. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing *St. Mary's*, 509 U.S. at 507–08, 511)).  Whether evidence proffered to show pretext suffices to raise an inference of unlawful discrimination or retaliation is a fact-sensitive inquiry. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998); *Walker v. Johnson*, 798 F.3d 1085, 1091–92 (D.C. Cir. 2015) (identifying the following factors that may support an inference of pretext: the employer's (1) preferential treatment of similarly situated employees outside the plaintiff's protected group; (2) inconsistent or dishonest explanations; (3) deviation from established procedures or criteria; (4) pattern of poor treatment of other employees within the same protected group as the plaintiff; (5) the temporal proximity between an employee's protected activity and the employer's adverse action; and (6) other relevant evidence that a jury could consider to reasonably conclude the employer acted with an illicit motive).

The adverse employment action here is SaintPreux's termination, and FEMA has asserted a legitimate, non-discriminatory reason for doing so.  In particular, FEMA points to SaintPreux's

termination letter, which documents his track record of "poor performance and misconduct." Def.'s Mot., ECF No. 25-17, Ex. 13 at 2.  The letter cites to numerous incidences in support of the decision to terminate.  It begins by documenting SaintPreux's failure to update his progress reports despite numerous reminders to do so.  *Id.*  It continues by describing SaintPreux's failure to attend a fair even though he had corresponded with the fair organizer to confirm FEMA's attendance.  *Id.* (Porter, who attended the fair, took note of the empty table reserved for FEMA.  *Id.*)   The letter goes on to explain yet another episode of insubordination, noting that SaintPreux attended a meeting with a different FEMA office without informing a supervisor in advance even though a supervisor had to approve of engagement with an outside office ahead of time.  *Id.*  It also describes a meeting where SaintPreux showed up unprepared for his presentation.  He did not bring printed materials for the attendees (Porter included) or anything to take notes on.  *Id.*  His lack of preparation forced Lyttle to step in and take over.  *Id.*  The letter details SaintPreux's failure to accomplish multiple tasks assigned to him while Lyttle traveled overseas.  *Id.*  It also discusses an episode where SaintPreux visited a local nonprofit with no connection to FEMA instead of returning home to telework as instructed.  *Id.*  SaintPreux visited the nonprofit despite clear instruction not to speak with outside stakeholders unless granted permission.  *Id.*  The letter explains that SaintPreux had been given work assignments designed to allow him to demonstrate that he possessed the "necessary communication, coordination, and problem solving skilled required to perform" his duties.  *Id.* at 3.  SaintPreux's execution of those work assignments, the letter concluded, gave management little confidence he could do the job.

It is permissible to terminate an employee based on that employee's inability to get the job done, as "performance below the employer's legitimate expectations" amounts to one of the most "common (and legitimate) reasons to terminate an employee." *Harris v. D.C. Water & Sewer*

7

*Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (quotation omitted).  And the evidence substantiating SaintPreux's poor performance and misconduct is consistent with the factors outlined in *Figueroa v. Pompeo*, 923 F.3d 1078 (D.C. Cir. 2019).  First, FEMA has presented sworn declarations and deposition testimony from the relevant decisionmakers as well as contemporaneous documents— all proffered in an admissible form for trial purposes.  *Id.* at 1087.  Second, the factfinder hearing the evidence would "find that 'the employer's action was motivated by' a nondiscriminatory reason."  *Id.* (quotation omitted).  Third, FEMA's proffered explanation overcomes the "facially credible" hurdle.  *Id.* (quotation omitted).  And fourth, the explanations fall in the "clear and reasonably specific" bucket.  *Id.* (quotation omitted).

Because FEMA has offered a legitimate, non-discriminatory reason for terminating SaintPreux, the question at summary judgment is whether SaintPreux can rebut this explanation. *See Brady*, 520 F.3d at 494.  Stated differently, the central question is whether SaintPreux "produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [SaintPreux] based on his race."  *Id.* at 494–95.

SaintPreux first suggests that FEMA's purported rationales for terminating him "fall[] well short of credence."  Pl.'s Response to Def.'s Mot. for Summ. J. ("Opp'n"), ECF No. 29, at 10.  A plaintiff may in some narrow circumstances "establish pretext with evidence that a factual determination underlying an adverse employment action is egregiously wrong.'"  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015).  But that is not this case.  FEMA's termination letter details with substantial support from the summary judgment record the reasons for SaintPreux's termination.  "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered

. . . [but] whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quotation omitted).

SaintPreux also casts doubt on the significance of many of the allegations in the termination letter and tries to create genuine issues of material fact with bald assertions. But "a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to genuine issues of material fact in the record" "to defeat a motion for summary judgment." *Accurso v. Fed. Bureau of Investigation*, No. CV 19-2540 (CKK), 2021 WL 411152, at *8 (D.D.C. Feb. 5, 2021) (quotation omitted). SaintPreux may disagree with FEMA's reasons for deciding to terminate his employment, but disagreement does not amount to pretext without showing that false reasons were deployed as a smokescreen to provide cover for unlawful discrimination. *St. Mary's*, 509 U.S. at 515.

SaintPreux's attempt to prove discrimination with comparator evidence falls short. Presenting evidence that "the employer treated similarly situated persons who were not the same race as the plaintiff more favorably than it treated the plaintiff can [] be probative of discrimination." *Burley*, 801 F.3d at 296–97. To show that one is "similarly situated to another employee, [the employee] must demonstrate . . . that all of the relevant aspects of [his] employment situation were nearly identical to those of the other employee." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016) (quotation omitted). SaintPreux has offered a comparator, but he has proffered no evidence that the comparator had a similar record of poor performance. Moreover, the comparator was not a probationary employee, and SaintPreux has failed to explain how he (the only probationary employee under Lyttle's supervision) can be properly compared with a non-probationary employee. *Holbrook v. Reno*, 196 F.3d 255, 262 (D.C.

9

Cir. 1999) ("[W]e cannot see how Holbrook, a probationary trainee, could possibly be similarly situated to a fifteen-year veteran with supervisory responsibilities.").

In sum, SaintPreux has failed to proffer evidence from which a reasonable juror could find that FEMA's proffered justifications for firing SaintPreux—his misconduct and poor performance—were pretextual. Summary judgment on his employment discrimination claim is therefore appropriate. *Barot v. Embassy of Republic of Zambia*, 299 F. Supp. 3d 160, 183 (D.D.C. 2018), *aff'd*, 773 F. App'x 6 (D.C. Cir. 2019) (quotation omitted) ("[T]he issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.")).

### B. SaintPreux's Claim of Unlawful Retaliation

A Title VII provision separate from the discrimination provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under that provision, a plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link connects the two. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).[2] If a plaintiff establishes *a prima face* case of retaliation, the same burden-shifting framework that applies to claims of unlawful discrimination also applies to claims of unlawful retaliation. *Johnson*

---

[2] To engage in protected activity, the employee must either participate in a Title VII proceeding or oppose an employer's discriminatory action. *See Wang v. Washington Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 77 (D.D.C. 2016); *Khatri v. Bd. of Trustees of Univ. of D.C.*, No. CV 19-2644 (RBW), 2021 WL 2403087, at *5 (D.D.C. June 11, 2021). To suffer an adverse action under the retaliation provision, the action need not be employment-related, but it must be an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). FEMA does not dispute that SaintPreux engaged in protected activity and suffered adverse action.

*v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1099 (D.C. Cir. 2017); *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).

SaintPreux alleges that FEMA retaliated against him by terminating his employment after he filed an Equal Employment Opportunity complaint against his supervisors. Compl. ¶ 25. He first initiated contact with the Agency in May 2017, and he filed a formal complaint in August 2017. *Id.* ¶ 14. FEMA terminated SaintPreux later that month. *Id.* SaintPreux's claim of unlawful retaliation faces two hurdles. First, can he show a causal link between his protected activity and his eventual termination? Second, assuming SaintPreux has established a *prima facie* case, can he rebut FEMA's justifications for terminating him?

To establish the requisite causal connection for an unlawful retaliation claim, the plaintiff must show "that the employer had knowledge of the employee's protected activity," *Dave v. Lanier*, 606 F. Supp. 2d 45, 51 (D.D.C. 2009), or that temporal proximity gives rise to a causal inference, *Na'im v. Clinton*, 626 F. Supp. 2d 63, 78 (D.D.C. 2009); *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014); *Francis v. D.C.*, 731 F. Supp. 2d 56, 77 (D.D.C. 2010) ("Hence, the Court looks to whether temporal proximity, in combination with the employer's knowledge, is sufficient to support an inference of a causation.").

Good reason exists to doubt that a causal link connects SaintPreux's protected activity to his eventual termination. FEMA discussed terminating SaintPreux months before SaintPreux engaged in any protected activity. In particular, Lyttle contacted human resources in October 2016 to discuss his lack of satisfaction with SaintPreux's progress and to request that SaintPreux be placed on "Performance Improvement Plan." Def.'s Mot., ECF No. 25-7, Ex. 7 at 2. Human resources responded that SaintPreux lacked eligibility for the plan and proposed "termination [as] the recommended course of action." *Id.* After discussions with leadership, Lyttle decided to give

SaintPreux "another opportunity to improve his performance."  Def.'s Mot., ECF No. 25-7, Ex. 7 at 16.  FEMA documented additional episodes of SaintPreux's poor performance between October 2016 and his eventual termination in August 2017, which added reason to follow through on prior discussions.

To be sure, FEMA did not terminate SaintPreux until August 2017.  And SaintPreux first engaged in protected activity in May 2017.  But employers need not suspend prior plans upon discovering that a Title VII suit has been filed or an employee has engaged in protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  The record shows that Lyttle gave SaintPreux another shot and that SaintPreux failed to make the most of it.  *See Craig v. Mnuchin*, 278 F. Supp. 3d 42, 64–65 (D.D.C. 2017) (holding that no retaliation occurred when the evidence showed an employer contemplated removing an employee from his position before the employer learned of his protected activity and then later proceeded to terminate the employee).

Even assuming SaintPreux has proffered evidence of causality and has established a *prima facie* case of unlawful retaliation, he does not rebut FEMA's legitimate reasons for firing him.  Once an employer has offered a legitimate, non-retaliatory reason for the challenged action, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine." *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012) (quotation omitted).  As already discussed, the termination letter documents numerous reasons for terminating SaintPreux based on his poor performance.  Besides quibbling with the judgment of his supervisors, SaintPreux fails to offer evidence to suggest pretext.

SaintPreux attempts to defeat summary judgment on his retaliation claim with the argument that he was subjected to a "pattern of antagonism."  Opp'n at 20.  A plaintiff can establish causation through a "pattern of antagonism." *Smith-Haynie v. United States Veterans Initiative*, No. 17-CV-

2824 (TSC), 2020 WL 2838605, at *5 (D.D.C. June 1, 2020). To do so, the plaintiff must offer "evidence of a pattern of antagonism following closely on the heels of protected activity and related to the challenged employment action." *Allen*, 795 F.3d at 46; *Payne v. District of Columbia*, 4 F. Supp. 3d 80, 89 (D.D.C. 2013); *Taylor v. Solis*, 571 F.3d 1313, 1322–23 (D.C. Cir. 2009) (quotation omitted) ("plaintiff can establish a link between his or her protected behavior and [the alleged reprisal] if the employer engaged in a pattern of antagonism in the intervening period"). SaintPreux concedes that he engaged in protected activity for the first time in May 2017, which occurred after most of the reasons given in the termination letter for his firing. Plus, SaintPreux fails to allege facts sufficient to show a pattern of antagonism between May and August that led FEMA to fire him for retaliatory reasons. As a result, he has not proffered evidence from which a reasonable juror could find causation or pretext based on an alleged pattern of antagonism.

### III. Conclusion

For the foregoing reasons, FEMA's Motion for Summary Judgment is **GRANTED**. An Order will be entered contemporaneously with this Memorandum Opinion.

It is so **ORDERED**.

DATE: September 1, 2021

CARL J. NICHOLS
United States District Judge